# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

MICHELLE LEE SIMS,　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　Plaintiff,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)　Case No.: 2:17-cv-01489-JHE
EVENT OPERATIONS GROUP, INC.,　　　)
et al.,　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　Defendants.　　　　　　　　　)

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Michelle Lee Sims ("Sims" or "Plaintiff") brought this action on September 1, 2017, against Defendants Event Operations Group, Inc. ("EOG") and Mike Jones ("Jones," and together with EOG, "Defendants"), alleging Defendants violated the Fair Labor Standards Act ("FLSA") by failing to pay her overtime compensation. (Doc. 1). Sims has since amended her complaint, and her second amended complaint, (doc. 15) is the operative pleading. Sims now moves for partial summary judgment. (Doc. 24).[2] Defendants oppose the motion in part. (Doc. 28). Sims has filed a reply in support. (Doc. 32). Sims has also moved to strike evidentiary material Defendants have submitted in opposition in the motion for summary judgment, (doc. 30), and Defendants oppose that motion to strike, (doc. 33). For the reasons stated below, the motion to strike is **DENIED** and the motion for summary judgment is **GRANTED**.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 17).

[2] The referenced motion is actually Sims' amended motion for summary judgment, though her original motion, (doc. 22), remains pending. Because this memorandum opinion resolves the issues raised in Sims' original motion for summary judgment, it is **DENIED AS MOOT**.

## I. Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 447 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere

'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Evidentiary Objection

As noted above, Sims has moved to strike nearly identical declarations by Jones or, failing that, what she alleges are inadmissible portions of those declarations. (Doc. 30).

With the December 1, 2010 rules change to Rule 56 of the Federal Rules of Civil Procedure, motions to strike submitted on summary judgment are no longer appropriate. Revised Rule 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." The Advisory Committee Notes specify as follows:

> Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. There is no need to make a separate motion to strike. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

FED. R. CIV. P. 56, Adv. Comm. Notes, "Subdivision (c)" (2010 Amendments). "Before this amendment, parties properly challenged evidence used in a summary judgment motion by filing a motion to strike. The plain meaning of these provisions show that objecting to the admissibility of evidence supporting a summary judgment motion is now a part of summary judgment procedure, rather than a separate motion to be handled preliminarily." *Campbell v. Shinseki*, 546 F. App'x 874, 879 (11th Cir. 2013).

**A. Declarations in General**

The two declarations Sims objects to are identical apart from their signature blocks. (*Compare* doc. 28 at 11-14 *with* doc. 29). Both declarations are attributed to "Mike Jones, in my capacity as CEO of Event Operations Group, Inc., and in my proper person herein." (Doc. 28 at 14; doc. 29 at 4). The first was submitted along with Defendants' response to Sims' motion for summary judgment on September 10, 2018 (one day before Defendants' response deadline, (*see* doc. 27)); it is dated the same day. (Doc. 28 at 11-14). Instead of a signature, the declaration states it was "reviewed and approved by Declarant with signature to follow." (*Id.* at 14). True to that representation, the second declaration, submitted separately on September 24, 2018 and dated the same day, contains a signature. (Doc. 29 at 4).

Sims argues the unexecuted declaration submitted timely with Defendants' motion for summary judgment is technically defective because it fails to include a statement that it was made under penalty of perjury. (Doc. 30 at 3-4). She then contends the executed declaration is procedurally defective because it fails to comply with the requirement in the undersigned's Initial Order requiring evidentiary materials to be filed along with briefs, (*see* doc. 18 at 6). Regardless of any technical defect in the original affidavit, based on Defendants' representations Jones was unavailable to sign the declaration when their brief was due, (doc. 33 at 1-2), the undersigned will excuse Defendants' noncompliance with the Initial Order and will consider the substantively identical executed declaration (the "Jones Declaration") timely filed.[3]

---

[3] Obviously, Defendants' production of a signed, technically sound affidavit shows the unexecuted affidavit is not the type of evidence that "cannot be presented in a form that would be admissible in evidence," FED. R. CIV. P. 56(c)(2).

### B. Inadmissible Portions of the Jones Declaration

Sims points to three paragraphs in the Jones Declaration she says contain inadmissible evidence: paragraphs 5, 11, and 13. (Doc. 30 at 5-6). In relevant part, these paragraphs state:

> 5. In my capacity as CEO of EOG I would not have had, and did not have, knowledge of payroll miscalculations relating to Ms. Sims or of her self-scheduling of company scheduling of her hours and events. EOG has company policies in place to handle payroll calculations and employee scheduling and to prevent payroll miscalculations and occasions of self-scheduling. If the policies in place were not being followed then that would be the only possible way that payroll miscalculations and mis[-]scheduling could and would occur. In my view as CEO, the company and its executive leadership and its owners did what was supposed to have been done. Paid employees who chose to bypass policies leading to errant payroll calculations and errant scheduling would have been the cause of such, not the owners of EOG and not the entity EOG. It is my strong belief and position that there was no neglect on the part of the owners or on behalf of the company because that is simply not the case.
>
> [. . .]
>
> 11. As CEO of EOG, and in my individual capacity, I state to the Court that any failure of EOG to pay overtime (time and one-half) amounts to Ms. Sims for the overtime hours alleged to having been worked by her was the product of and attributable to company policies having not been followed which in no way occurred . . . at the direction of the ownership and executive leadership of EOG. No purposeful effort was or ever would have been made by EOG or its owners to knowingly deny and withhold overtime wages.
>
> [. . .]
>
> 13. On the basis of the statement immediately above, and on behalf of EOG and for myself individually, it is our position that two times or three times liquidated damages are unnecessary, unwarranted and extreme in the instant facts.

(Doc. 29 at ¶¶ 5, 11 & 13). Sims states these paragraphs contain statements not made on personal knowledge, conclusory statements and opinions, and irrelevant statements. (Doc. 30 at 6-11). Defendants' response states only that Jones' unique position within EOG means the statements are not inadmissible, and because of Jones' "ownership and executive officer positions" he is a knowledgeable declarant. (Doc. 33 at 4-5).

For the most part, Sims has the better argument. Rule 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge [and] set out facts that would be admissible in evidence . . . ." FED. R. CIV. P. 56(c)(4). Jones specifically disclaims knowledge of Sims' employment and the event locations where Sims worked, familiarity with EOG's issuance of wage checks or tax forms to Sims, and knowledge of payroll miscalculations related to Sims. (Doc. 29 at ¶¶ 2-5). Beyond Jones' statement he is "a sixty percent (60%) owner and CEO of Event Operations Group, Inc," (doc. 29 at ¶ 1), the Jones Declaration provides no reason to conclude Jones has any firsthand knowledge of EOG's policies and procedures related to overtime compensation, scheduling, or payroll, nor the reason Sims was not properly paid overtime. That said, the undersigned concludes Sims is entitled to summary judgment even taking the contentions in the Jones Declaration into account; therefore, Sims' objection is **OVERRULED** to the extent that the undersigned will consider the Jones Declaration.

### III. Summary Judgment Facts[4]

EOG provides staffing (e.g., security and customer service staff) to its customers for events. (Doc. 15 at ¶ 1; doc. 16 at ¶ 1).[5] EOG operates on a national basis and is subject to the overtime requirements of the FLSA. (Doc. 15 at ¶ 21; doc. 16 at ¶ 21).

Jones is an owner and corporate officer of EOG and controls its day-to-day operations and finances. (Doc. 15 at ¶ 10; doc. 16 at ¶ 10). Jones' control extends to employee compensation,

---

[4] The following facts are undisputed or, if disputed, taken in the light most favorable to Defendants.

[5] Defendants' answer and affirmative defenses, (doc. 16), lists several affirmative defenses in numbered paragraphs prior to the numbered paragraphs in its answer, which restart at 1, (*see id.* at 3). The citations in this section refer to the second set of numbered paragraphs.

and Jones could direct EOG to compensate Sims consistent with the FLSA or not compensate her consistent with the FLSA. (Doc. 15 at ¶ 11(a)-(b); doc. 16 at ¶ 11).

EOG employed Sims from August 11, 2015, until her termination. (Doc. 15 at ¶ 9; doc. 16 at ¶ ¶ 9; doc. 10 at ¶ 5). During Sims' employment, EOG assigned her to work at various locations including Barber Motor Sports, Pelham High School, the University of Alabama, and the City of Vestavia Hills. (Doc. 15 at ¶ 12; doc. 16 at ¶ 12). Since December 2015, Sims was assigned to the McWane Center in downtown Birmingham. (Doc. 15 at ¶ 13; doc. 16 at ¶ 13)

EOG paid Sims on an hourly basis. (Doc. 15 at ¶ 11; doc. 16 at ¶ 11). Sims' time was recorded weekly and she was paid "straight time" for all hours worked. (Doc. 25-1 at ¶ 10; doc. 15 at ¶ 14; doc. 16 at ¶ 14). Sims was a non-exempt employee and eligible for overtime compensation. (Doc. 15 at ¶ 22; doc. 16 at ¶ 22). Nevertheless, Sims was never paid overtime for work performed over forty hours per week. (Doc. 25-1 at ¶ 10). All told, EOG failed to pay Sims for 260.50 hours of overtime during 2017, a total of $1,172.25, and 222.75 hours of overtime in 2016, a total of $968.00. (Doc. 25-1 at ¶¶ 12-16).

Jones denies any knowledge of Sims' employment with EOG or the way in which EOG paid Sims specifically. (Doc. 29 at ¶¶ 3-4). Jones also states EOG has "company policies in place to handle payroll calculations and employee scheduling and to prevent payroll miscalculations and occasions of self-scheduling." (*Id.* at ¶ 5). Jones says any payroll miscalculations in general would have been caused by "[p]aid employees who chose to bypass policies leading to errant payroll calculations and errant scheduling." (*Id.* at ¶ 5). He extends this to Sims, stating any failure to pay overtime pay to Sims was the result of "company policies having not been followed," and disclaims, on behalf of himself and EOG, that he or any other EOG owner or leader directed or knew about the violations. (*Id.* at ¶ 11).

## IV. Analysis

Sims' second amended complaint asserts two counts: (1) in Count I, that Defendants failed to pay her overtime in violation of the FLSA; and (2) in Count II, Defendants terminated her after she filed her lawsuit in violation of the FLSA's anti-retaliation provisions. (Doc. 15). Sims has moved for summary judgment on the following issues: (1) her entitlement to unpaid overtime; (2) the amount of unpaid overtime she is entitled to; (3) whether liquidated damages are appropriate; (4) whether Jones was her employer; and (5) whether Jones is jointly and severally liable for the FLSA damages. (Doc. 24 at 5-6). Defendants concede the first two: they admit Sims is owed unpaid overtime in the amount she claims (483.25 hours, for a total of $2,140.25), and have stipulated judgment should be entered in Sims' favor on EOG's liability to her for unpaid overtime. (Doc. 28 at 6-7). However, they oppose summary judgment on the remaining three issues.

### A. Liquidated Damages

An employer who violates the FLSA's overtime provisions is liable to the employee for the employee's unpaid overtime compensation and for liquidated damages equal to that unpaid overtime compensation. 29 U.S.C. § 216(b). An employer may avoid liquidated damages only by "show[ing] to the satisfaction of the court that the act or omission giving rise to [the violation] was in good faith and that [it] had reasonable grounds for believing that [the] act or omission was not a violation." 29 U.S.C. § 260. The employer bears the burden to show it acted with both objective and subjective good faith. *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008). Absent a showing of good faith, an award of liquidated damages is mandatory; the court has no discretion to deny liquidated damages until the employer carries its burden. *Spires v. Ben Hill Cty.*, 980 F.2d 683, 689 (11th Cir. 1993); *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987) (citation omitted).

The only evidence Defendants have offered is the Jones Declaration. After reciting the legal standard, the entirety of Defendants' argument liquidated damages are unwarranted in this case is:

> In the instant case, there has been no evidence presentation [sic] by Plaintiff that Defendants have **not** been operating in good faith or that the failure to obey the statute was predicated on something other than reasonable grounds. See entirety of Declaration of Mike Jones. The open questions of good faith and reasonable grounds, Defendants submit, present questions and issues of material fact that weigh in favor of overruling and denying Plaintiff's summary judgment motion.

(Doc. 28 at 8) (emphasis in original).

Defendants misunderstand the liquidated damages issue. The burden is not on Sims to show the absence of good faith, it is on them to show its presence. *See Rodriguez*, 518 F.3d at 1272. Defendants have not done so. The Jones Declaration states Jones' speculative belief that Sims' unpaid overtime resulted from unspecified EOG policies that were not followed, which Jones claims was unintentional. (Doc. 29 at ¶¶ 5, 11). At an absolute maximum, this could conceivably support the subjective component of the good faith analysis (i.e., Defendants' belief no violation was occurring). This is not enough. *See Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991) (evidence supporting a defendant's "honest intention" was insufficient when the employer did not also show it had reasonable grounds for believing its conduct comported with the FLSA). Defendants provide nothing — whether through argument or evidence — to support the objective component such that the undersigned could conclude Jones' belief was reasonable. Defendants do not, for example, provide any evidence describing the policies that relate to payroll calculations, *see Lopez-Easterling v. Charter Commc'ns LLC*, 2017 WL 2557667, at *2 (N.D. Ala. June 13, 2017), or illustrating EOG's accounting procedures, *see Ojeda-Sanchez v. Bland Farms, LLC*, 499 F. App'x 897, 903 (11th Cir. 2012). Further, Defendants'

objective reasonableness in relying on their policies is undermined by a motion for approval of a settlement agreement in *Ryan, et al., v. Event Operations Group, Inc.*, Case No. 2:12-cv-00670-MHH (N.D. Ala.).[6] In this motion, EOG, despite generally denying liability, admits that it paid an employee straight time instead of overtime for work in excess of forty hours notwithstanding its policies.[7] (Doc. 25-3). The undersigned takes judicial notice that this motion, which is dated January 17, 2014, was approved on January 31, 2014, *see Ryan* at doc. 31, prior to the admitted FLSA violations that took place in this case.[8] The undersigned finds Defendants have not carried their burden to demonstrate objective good faith.

The Jones Declaration is also insufficient to show subjective good faith. To the extent Jones disclaims knowledge of overtime violations and speculates the overtime violations resulted from other employees not following EOG's policies (whatever they may be), (doc. 29 at ¶¶ 5 & 11), an employer cannot necessarily escape liability by delegating overtime decisions to subordinates. "[I]n reviewing the extent of an employer's awareness, a court need only inquire whether the circumstances . . . were such that the employer either had knowledge [of overtime hours being worked] or else had the opportunity through reasonable diligence to acquire knowledge." *Reich v. Dep't of Conserv. and Nat. Res., St. of Ala.*, 28 F.3d 1076, 1082 (11th Cir.1994) (internal quotations

---

[6] Sims also offers Defendants' discovery responses, in which they admit that a government agency investigated EOG for claims similar to Sims'. (Doc. 25-2 at 4-5). There is no further information about the investigation, and nothing to suggest it resulted in any finding EOG had committed overtime or other FLSA violations. Accordingly, the fact this investigation occurred does not factor into the good faith analysis. *See Ojeda-Sanchez*, 499 F. App'x at 903 (finding lawsuits against defendants did not compel a finding of willfulness when none had found an FLSA violation).

[7] Rather than deny it violated the FLSA, EOG intended to rely on the defenses of waiver and estoppel. (Doc. 25-3 at 3).

[8] *See United States v. Glover*, 179 F.3d 1300, 1302 n.5 (11th Cir. 1999) ("A court may take judicial notice of its own records and the records of inferior courts."); FED. R. EVID. 201

and citations omitted). *See also Caserta Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir. 1959) (the employer cannot "transfer his statutory burdens of accurate record keeping . . . and of appropriate payment, to the employee). In this case, the evidence supports EOG had actual knowledge of an FLSA violation because EOG recorded Sims' hours, paying her straight time for hours she should have received overtime pay. (Doc. 25-1 at ¶ 10; doc. 15 at ¶ 14; doc. 16 at ¶ 14). Jones could have obtained this knowledge for himself through reasonable diligence; as he noted in his declaration, his review of Sims' paystubs indicated she was erroneously paid. (*See* doc. 29 at ¶ 6). This demonstrates Jones' constructive awareness of a violation. *See Ingram v. Passmore*, 175 F. Supp. 3d 1328, 1334 (N.D. Ala. 2016) (imposing liquidated damages over employer's objection he lacked knowledge of overtime violations when employer could easily calculate overtime owed through examining employee's paychecks). In the absence of contrary evidence — which was Defendants' burden to produce — the undersigned concludes Defendants' professed ignorance of overtime violations is insufficient to show their subjective good faith.

Although Defendants state "a divergence of factual assertions" requires the issue of liquidated damages to be resolved by the trier of fact at an evidentiary hearing, once liability is set, the question of liquidated damages falls to the judge. *See Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1163 (11th Cir. 2008). It is not inappropriate to resolve the issue of liquidated damages at summary judgment once an FLSA violation has been established. *See, e.g., Ingram,* 175 F. Supp. 3d at 1334 (awarding liquidated damages to one set of plaintiffs on summary judgment, but deferring as to others because no FLSA violation had been established); *Meeks v. Pasco Cty. Sheriff*, 688 F. App'x 714, 718 (11th Cir. 2017) (affirming award of liquidated damages at summary judgment). Because Defendants have failed to meet their burden to establish

good faith, an award of liquidated damages is mandatory. Therefore, Sims' motion for summary judgment is due to be granted as to liquidated damages in the amount of $2,140.25.

**B. Jones' Individual Liability**

A person cannot be held individually liable for violating the FLSA's overtime provision unless he is an "employer" under the Act. *Alvarez Perez*, 515 F.3d at 1160 (citing 29 U.S.C. § 207(a)(1); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984)). An employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel v. Wargo*, 803 F.2d 632, 637–38 (11th Cir. 1986) (internal quotation marks and citation omitted). To fit into this definition, the officer "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Id.* at 638.

Sims points to Defendants' admissions in their answer that Jones had control over day-to-day operations of EOG, including employee compensation, and that he is Sims' employer. (Doc. 24 at 16-18). In their response, Defendants deny Jones had the amount of control Sims alleges "relating to operations and finances, including employee compensation." (Doc. 28 at 8-9). They also state that while Jones may be considered Sims' FLSA employer "in the most enlarged view," he lacked "privity of relationship" with Sims because Sims received pay from EOG. (*Id.* at 9). Defendants further deny Sims has produced any evidence Jones is Sims' employer. (*Id.*).

The problem for Defendants is the admissions in their answer bind them. *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir.1983). Further, Sims was not required to come forward with any evidence in support of these contentions; "facts

12

judicially admitted [in an answer] are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1178 (11th Cir. 2009) (quoting *Hill v. Federal Trade Comm'n*, 124 F.2d 104, 106 (5th Cir. 1941)).[9] As Sims states, Jones has admitted in his answer to the second amended complaint he is her employer under the FLSA.[10] (Doc. 15 at ¶ 10; doc. 16 at ¶ 10). Jones also admitted in the answer he is an owner and corporate officer of EOG and controls its day-to-day operations and finances, (doc. 15 at ¶ 10; doc. 16 at ¶ 10), that his control extends to employee compensation, (doc. 15 at ¶ 11(a); doc. 16 at ¶ 11), and that he could direct EOG to compensate Sims consistent with the FLSA or not compensate her consistent with the FLSA, (doc. 15 at ¶ 11(b); doc. 16 at ¶ 11). Taken together, these also support Jones is Sims' employer under the FLSA even ignoring his explicit concession. *See Patel*, 803 F.2d at 638. Because these admissions are binding on Defendants, their efforts to minimize them fall flat.[11] The undersigned finds Sims has established Jones is her employer under the FLSA, and her motion is due to be granted as to that issue.

---

[9] The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

[10] Technically, Jones has admitted he is Sims' "employer, co-employer, and/or joint employer under the FLSA," but since Sims' work for both Jones and EOG was a single FLSA employment, *see* 29 C.F.R. § 791.2, there is no real distinction among these terms in this case.

[11] Although it would not have helped them in the face of their admissions, the undersigned notes Defendants do not support their arguments with evidence of their own controverting Jones is Sims' employer, nor citations to any authority for the proposition that "privity of relationship" is relevant for employer status under FLSA.

### C. Joint and Several Liability

As stated above, a corporate officer employer (like Jones) is jointly and severally liable with the corporation for unpaid wages. *Patel*, 803 F.2d at 637–38 (11th Cir. 1986). To rebut Sims' contention Jones is jointly and severally liable under this standard, (doc. 24 at 18), Defendants reproduce, word for word, their arguments against liquidated damages and against Jones' individual liability. (Doc. 28 at 9-10). The undersigned has already found these unavailing. Accordingly, Sims' motion is granted as to Jones' joint and several liability with EOG.

### V. Conclusion

For the reasons stated above, Sims' motion for partial summary judgment is **GRANTED**. A partial judgment in the amount of $4,280.50 in favor of Sims and against both Defendants, jointly and severally, will be entered by separate order.

The remaining claim in this action, Sims' retaliatory termination count, proceeds. The parties are encouraged to discuss alternative dispute resolution, including the potential for mediation. The parties are **ORDERED** to file a joint status report by **April 4, 2019**, regarding the status of such discussion and whether they believe mediation would be beneficial to the resolution of this action.

DONE this 21st day of March, 2019.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE